JOHN HENDERSON & Co. *v.* CHARLES CLARKE, Administrator, &c.

Where there are no debts due by a deceased person, his administrator has no authority to sell slaves, and in making a distribution, the heirs can force the administrator to adhere to their own agreement in that respect.

Joint owners of property, when they are able to contract, may agree upon the terms of dividing it among themselves.

Henderson & Co. *v.* Clarke.

The law presumes that every one who enters into a contract, had the ability to do so, unless the contrary shall be shown.

An administrator *ad colligendum* has no power to pay debts, or to sell property for the payment of debts, or to make distribution.

In error from the circuit court of Warren county; Hon. R. Barnett, judge.

On the 15th day of November, 1838, John Henderson & Co. recovered a judgment in the circuit court of Warren county against Washington Smith for $446 damages, and $83.26½ costs. On the 11th of January, 1845, an execution, issued on that judgment, was levied on a negro boy named Jack. The negro was claimed and replevied by Charles Clarke as administrator *ad colligendum* of Samuel Smith, deceased, who gave bond for the trial of the right of property, dated March 14th, 1845. At the May term of the said circuit court, 1845, an issue was made up to try the right of property, and the case was regularly continued from that time until the 28th day of May, 1852, when it came on for trial. Upon the trial the plaintiffs read the execution levied on the negro Jack, and the sheriff's return thereon, showing the levy and replevy, &c. The judgment was admitted by defendant to have been recovered by plaintiffs as recited in the execution. Plaintiffs then read the deposition of O. S. Miles, which proved that he, as deputy sheriff of Jefferson county, levied the execution on Jack, who was then in possession of Washington Smith, in Jefferson county; that the negro was claimed and replevied as above mentioned, and was worth at the time of trial $700. Plaintiffs then read the deposition of Mary Smith, who proved that she was the widow of Samuel Smith; that she had never heard of any grant of administration on his estate; that Samuel Smith died in Bolivar county in May, 1853. The boy Jack was owned by him at the time of his death. In December, 1844, the heirs of Samuel Smith, being his brothers and sisters, and deponent, and all of age, divided the property in Bolivar county amongst themselves, and Jack was allotted to Washington Smith, who took him immediately thereafter to Jefferson county; and that all the debts against Samuel Smith's estate were paid by his

37 *

heirs. And plaintiffs then rested their case. Defendant then read to the jury a transcript of a record of the probate court of Bolivar county, which shows that on the 3d day of February, 1845, the probate judge of Bolivar county in vacation granted letters *ad colligendum* on Samuel Smith's estate, to Charles Clarke. This being all the evidence offered on either side, the court, at the request of defendant, instructed the jury as follows, namely : —

1. " The claimant asks the court to instruct the jury that, on the death of the owner of personal property, the title to such property vests in the administrator or executor, and does not vest in the distributees a separate property in any portion of the estate, but the same can only be reached through an administration."

2. "An administrator *ad colligendum* is entitled to the property of the intestate, for the purpose of paying debts and distributing the property amongst the distributees; and until such distribution, in the course of administration, no title vests in the distributees against the administrator." And the court refused to give the following instructions asked by plaintiffs, namely : —

1. " If the jury believe from the evidence, that on the death of Samuel Smith, before any grant of administration upon his estate, his heirs all met and divided his personal property among themselves, and the slave in controversy was allotted to and went into the possession of Washington Smith, before the levy of the execution on the slave, such division and award of possession to Washington Smith vested a title in Washington Smith, which no one but a creditor of Samuel Smith could object to."

2. " That if, on the death of a person, his heirs, before administration, distribute his personalty among themselves by agreement, and the deceased person owed no debts at the time, such division and distribution will vest title in the distributees, which a subsequent grant of administration will not divest."

Plaintiffs excepted to the opinion of the court in giving the instructions asked by defendant, and in refusing those asked by plaintiffs.

Plaintiffs moved for a new trial, which was overruled by the court, and they again excepted; and they now bring up the case by writ of error to this court.

*Smedes* and *Marshall* for appellant.

The negro in controversy belonged to Samuel Smith at the time of his death. In December, 1844, after his decease, his heirs being all of age, and there being no debts against the estate, they assembled and distributed his estate among themselves, and the boy Jack in controversy was allotted to Washington Smith, the defendant in execution, and was taken home to his residence in Jefferson county. In January, 1845, the execution of plaintiff was levied on the boy Jack, who was found in the possession of the defendant. The next month after the levy, in vacation, letters *ad colligendum* were granted on the estate of Samuel Smith, and in March the negro was replevied.

The object of granting letters *ad colligendum* was not to pay debts, or distribute the property, because the property had already been distributed, and there were no debts against the estate. Nor was any act ever done by the administrator touching the estate, except to replevy the negro. A voluntary distribution, made by distributees amongst themselves, or by other persons chosen by them for that purpose, is binding and valid, if the parties be capable of binding themselves by contract, or by assent. *Kilcrease* v. *Shelby*, 1 Cushm. 166.

The heirs of Samuel Smith were all of age, and the estate not in debt at the time of distribution. All the heirs, so far as is known, were and still are satisfied with the distribution; and no portion of the property distributed, as far as known, was ever claimed by the administrator, but the boy Jack. It is contended that the acts of the distributees, in dividing the property among themselves, was valid, and they were not compelled to submit to a formal administration before they could receive or take possession of their distributive shares of the estate.

*W. A. Lake* for appellee.

If the instructions given by the court are correct, they are

decisive of this case. That the administrator succeeds to and has the same property in the personal effects as the deceased had when living, is emphatically declared by Williams on Executors, p. 601.

The title to the possession of the slave Jack in defendant Clarke, by virtue of his letters *ad colligendum*, is beyond dispute, unless the informal distribution made by the heirs will have the effect of defeating it. A voluntary distribution made by the heirs or distributees of a decedent, it is believed can only be binding between themselves, but can never be maintained against the administrator of such decedent. But if it can be rendered available against the administrator, I submit to the court that the proofs in the case do not show that the distributees of Samuel Smith were of age, and that they all assented to distribution that was made. In the case cited by the plaintiffs' brief, the distribution was not upheld, but was adjudged to have been a nullity. From the facts contained in the record, it is impossible for the court to say that the distribution made by the heirs of Samuel Smith is considered binding amongst themselves, because it does not appear that they had all attained their majority, and had actually assented to the division that was made; that distributees could parcel out an estate amongst themselves without administration, and even against the consent of an administrator, and without refunding bonds, is certainly against the policy of our laws, and may be fraught with consequences fatal to creditors.

Mr. Justice FISHER delivered the opinion of the court.

This was an issue in the circuit court of Warren county, for the trial of the right of property to a certain slave, between John Henderson & Co., as judgment creditors of Washington Smith, and Charles Clarke, as administrator *ad colligendum* of the estate of Samuel Smith, deceased, as claimant of the slave.

The jury found a verdict for the claimant, which the court, on a motion for a new trial, refused to set aside, when the plaintiffs took a bill of exceptions embodying the evidence. The errors assigned are the refusal of the court to grant certain instructions,

asked by the plaintiffs, to the jury, the granting of the instructions on behalf of the claimant, and the refusal of the court to grant a new trial.

To understand the instructions granted on behalf of the claimant, it will be necessary briefly to notice the evidence.

Samuel Smith, the intestate, died sometime during the month of May, 1843, leaving no children; his widow and brothers and sisters were entitled, under the statute, to his personal estate. No administration having been granted on his estate, these parties in December, 1844, met together, and by agreement amongst themselves, divided the slaves of the intestate, when the slave now in controversy was allotted to and received by Washington Smith, one of the brothers of the deceased. It is also proved that previous to this division of the slaves, the widow and heirs paid and assumed to pay whatever debts the intestate owed.

It was insisted on the trial below that this proceeding on the part of the widow and heirs was void, inasmuch as the division or distribution of the property was made without administration on the estate of the deceased, and the court in effect so instructed the jury, which instruction, in our opinion, whatever the general rule of law may be, was erroneous under the facts of this case.

The object of distribution is to ascertain the share of each heir in the joint estate, and to give to it such identity as will enable him to enjoy it in severalty. Distribution gives to the heir, in fact, no new title. It merely ascertains the extent of his title or interest in the estate. An administrator holds the legal title as a trustee for those beneficially interested in the estate. He has only such legal title as is necessary to enable him to execute the trust. It is not necessary for the mere purpose of distribution, for him to have the legal title, and hence the law does not in such case give it to him. The act of distribution itself, is an admission of the title of the heirs at law. If this be true in regard to an administrator, why cannot heirs, who are capable of binding themselves, agree to divide or distribute the joint estate? If there were no debts due by the deceased, the administrator would have no authority to sell slaves. And in making the distribution, the heirs could force him to adhere

to their own agreement in that respect. Joint owners of property may certainly agree upon the terms of dividing it. The subject is one about which they may legally contract; and the only question which can arise is, whether they were capable in law of binding themselves, or giving a consent to a contract. Whether they were actually so in this instance, does not appear except by inference; but the law presumes that every person who enters into a contract had the ability to do so, unless the contrary shall be shown.

The second instruction of the court to the jury, that an administrator *ad colligendum* holds property for the payment of debts and for distribution, is not true even as a general rule of law. He has no power to pay debts, to sell property for that purpose, or to make distribution. We cannot, therefore, presume that he was appointed at the instance of creditors. He has power to sue for and collect debts, and as it is proved that there were some debts due to the estate, we must presume that he was appointed merely for this purpose.

His appointment does not even raise a presumption against the testimony that the debts of the estate were paid, for the reason that he is wholly without authority to pay them. The heirs could be pursued as executors *de son tort*, if necessary, by creditors, or any creditor may take out letters of administration on the estate, if necessary for the collection of debts. But the evidence in the cause is clear that the debts have all been paid, and no administrator would be allowed to set aside the agreement of the parties merely for the purpose of going through a more formal mode of distribution.

The judgment is reversed, new trial granted, and cause remanded.